in the briefs. The first case on calendar for argument is United States v. Cha. Good morning, counsel. Reuters, good morning. Gary Burcham on behalf of Appellant Roger Cha. I would like to start this morning with the first issue of my brief, which is the Miranda issue. Before I get to the merits, I think I need to talk about the waiver claim the government has raised. Essentially, the government is arguing that because this precise argument was not raised below, this Court should not entertain it now. There is no waiver as to this issue. In the district court, Mr. Cha's counsel specifically argued that the Miranda waiver was invalid. It certainly was more of a focus on the totality of the circumstances and more of a focus on the voluntariness. But the argument was made below, and I cited in the 28J letter to the Williams case, which says claims are preserved, not arguments. And so the claim was presented below. It's preserved. Our argument now is a little bit different, but the claim itself is preserved. Can I ask, that waiver issue doesn't concern me as much as the sense that you've abandoned the Preston's, you know, due process and voluntariness argument altogether and instead have focused just on the moment of the Miranda rights being waived. Am I right about that? I haven't abandoned it, Your Honor. I'm focused You haven't briefed it. And it was raised below. So how is it preserved for our review? Well, I'm not specifically arguing voluntariness. Totality of the circumstances, including the IQ of Mr. Cha, which was under 70. No, no. I'm talking about if you're just focused on whether the waiver of the Miranda rights was valid, all we are focusing on is everything that happened up until that point and then the moment when he signed the waiver. Right. Nothing that occurs after that is relevant, right? Well, it's relevant in the second part of that of that argument. I talked about the voluntariness and the totality of the circumstances. No, you didn't. That's what I'm saying. Well, maybe I need to reread your brief, but I read your brief as focusing just on the Miranda waiver. The lion's share of my Miranda brief is on the advisal. There's also a second part after that where I talk about the totality of the circumstances, his IQ, the tactics that the agents undertook. And so I certainly am focusing on the advisal portion of it. I don't believe I've abandoned that. I think that's raised in the second part. So he has to prove, obviously, two things to get relief for this claim. Number one, that he was in custody. Number two, that the advisal was unknowing and improper. I think the easier question for the court is the custody. As soon as Mr. Cha came into the house, he was immediately seized and detained and handcuffed. There were eight to ten armed federal agents, full tactical gear, all the stuff they always wear in those search warrants inside the house. It was a police-dominated atmosphere. I think there's no question about that. And he was handcuffed, not just for the initial seizure and securing of him, but for 20 to 30 minutes. And he was held in handcuffs for 20 to 30 minutes, up until the point where he was taken to the back bedroom, isolated from the rest of the family. And in the back bedroom, the two agents, Cotman and Amaro, interrogated him, door closed, two agents in their arms, and never told him he was free to leave and never told him that he was not under arrest until after the interview had happened. So I think custody is established. The closer question, I think, is the advisal. And the advisal is troubling in a couple different ways. First of all, the two agents go out of their way before they ever get to the rights to try to make it seem like this is a foregone conclusion that the interview is going to happen. And waiving the rights really isn't a big thing. They refer to the Miranda advisal form as paperwork. They tell Mr. Cha, we're going to read you your rights, it's just the law. And then Agent Cotman essentially gives him a road map and says, look, we're going to read you your rights, and then we're going to ask you some questions, and then when you're done, you can ask us some questions. So essentially telling Mr. Cha what was going to happen before it happened. So what the agent should have done is taken out the card, read the Miranda rights, and asked him if he wanted to speak. Instead of that, they prefaced the whole Miranda advisal process with these statements to try to minimize the importance of what he was about to do. It seems like your case that you're relying on for this argument, though, is duty, where it seems like the changes to the Miranda warnings were much more extensive than what happened here. So do we have any cases closer to this where it's like minor changes or minor additions of words? You're right, Judge. The duty that those agents went off the rails. And it was totally different than what happened here. But duty does establish the rule that, and this is the second part of what went wrong, you can't involve yourself in the waiver. When they read the rights to Mr. Cha and then said twice, do we agree? That's explicitly involving himself in the waiver. And again, we're talking with a gentleman whose IQ is probably in the high 60s. That suggested to Mr. Cha a couple of things. Number one, that the agent was part of the process. It wasn't his decision alone. The agent was part of the process in deciding to waive their Miranda rights. Number two, that he'd already decided he wanted to waive his Miranda rights. And number three, that it wasn't Mr. Cha's decision on his own. And so I think that when you combine what happened before the advisal and then you have the agent involving himself in the advisal, I think the combination of those creates a very coercive environment, especially for someone like Mr. Cha, who has serious English language shortcomings, certainly, and serious mental health comprehension issues, which the district court actually found in this case. Well, the district court, I think that as I read the district court, the district court did recognize the low IQ, but also kind of struggled with that a bit to say it also seems like he's fairly highly functioning. The district court found that there was an issue in terms of comprehension and an ability to comprehend what was happening. Didn't find necessarily what the expert for the defense found as far as that extreme, but definitely found that there was a cognitive issue that was there. And then, again, denied the motion, but definitely found that there was that This can't be harmless, this error. The only evidence against Mr. Cha in this trial were the statements the government admitted there was nothing from the computers itself that tied those videos to Mr. Cha. So if the court finds a Miranda violation, it has to reverse. Even if the court doesn't find a Miranda violation, it still has to reverse because of the odd way that the government introduced this interrogation. Mr. Cha began the interrogation by denying involvement in any of the downloading or possession. And then the agents turned up the heat on him in the interrogation and started telling him what their dad had, what his dad had told, had told them previously. What's illegal about that? There's nothing illegal about that, but that can't come in for its truth. The statements from the father to the agents cannot come in for their truth. Was there an objection made to that at trial? There wasn't, Your Honor. I think this was a situation where the judge assumed they were coming in for a limited purpose, and the lawyers assumed they were coming in for a limited purpose. And that's fine. But the jury doesn't understand the rules of hearsay and the rules of confrontation. Was any instruction proffered to limit the jury's use of that evidence? No, Your Honor, because I think no one realized really what was happening, what the problem was during the trial. And I was- So you're asking us to say that the judge should have sua sponte? Okay. It has to. It has to. I cited the Whitman case, the Collins case, the Jordan case, where the courts all said in those decisions, like, you have to give a limiting instruction when you're introducing the entirety of- Even if no instruction is proffered? Yes, you have to. What case most strongly supports your argument that it's plain error for a judge to fail to sua sponte, give an instruction in those circumstances? I think all the cases that- Well, give me a strongest one. I think probably the Collins case is the best case, where they actually, in the Collins case, put in that opinion the instruction the court gave, which is what the court here should have done, which is tell the jury, you cannot consider the statements from the agents for their truth. Only for the context, only for the effect on the hearer, only for the effect on Mr. Cha. That instruction was never given. And so when the jury went back to deliberate in this case, they not only had the videos, they had the forensic evidence, they had Mr. Cha's statements, they also had essentially Mr. Cha's father as a witness against him, even though he was never called at trial. And so that's the problem with this, the introduction of the interrogation. Well, in Collins, didn't we say that there is no need to, with the Tenth Circuit, actually, it's a Tenth Circuit case, didn't the court say there was no need to even determine if that was error? So there was really no ruling that it was error to admit those statements. That's true, but they did include the jury, the district court's instruction in that case, which told the jury exactly what should have been told to the jury. In this case, again, there was no objection. I think everyone just assumed that it was not coming in for that purpose. The jury didn't make that same assumption, so it came in for its truth, and that was terribly- Do you have a Ninth Circuit case that talks about the obligation of the judge to sua sponte, give an instruction of the nature that you think is appropriate? The Whitman case is the only case I could find that talks about the need to have that come in, not for its truth. There's no plain error analysis in that case, but I think the rule is out there. And it's not just this context, it's hearsay, it's confrontation. You can't have those statements coming in for their truth when they're as damaging as they are in this case. And that was the problem with the introduction of the interrogation. Even if Miranda was okay, the introduction of the interrogation itself, the form of it, requires reversal. All right, counsel. Thank you. We'll give you one minute for rebuttal. You've used most of your time. Good morning, Your Honors. May it please the Court. Mark McKeon for the United States. There's four issues here, and I'd like to actually start at the back and work my way forward, because the fourth issue is the only issue that was clearly preserved at trial, and that's the instruction. That instruction has two paragraphs. There seems to be no argument that I could talk about the Miranda waiver issue. I don't know why you wasted your time on the argument you didn't even address. Yes, Your Honor. On the Miranda waiver, I think that as to the custody issue, it's important to know that he was definitely in custody, right? You've got to conceive that. Everybody assumed that he was the agent certainly assumed that he was in custody. Right. And that's why the agent So let's assume that, and why don't you address the argument your opponent made this morning. Which one, Your Honor? I'm sorry. The waiver argument or the Yes, that's why we'll Let's talk about the waiver. The Miranda waiver argument. Miranda waiver. Assume he was in custody. Miranda warnings were required. Why do you think that his argument fails on the waiver? Because this is an argument that could have been presented to the district court and was not. There's no record developed on it. No. The court made no findings. We're asking you to discuss the Miranda waiver substantively, not whether or not the issue was waived in court, but whether the Miranda waiver was valid. Yes, Your Honor. Yes. In this case, it's the government's position the waiver was valid. If you look at the words of the waiver, they what the agent read to Mr. Chaw tracks the written waiver expressly. The cases talk about how the words are important, but they just have to reasonably convey what happened. And here, I don't the government does not believe that merely saying do we agree instead of do you agree somehow puts the government into the position of having something to do with whether this waiver happens or not. It's essentially a colloquialism, it seems, that essentially saying do we agree with this or do you agree with this. It's unclear how that can change a valid waiver in this case. In terms of whether the waiver was knowing, voluntary, and intelligent, Judge Ishii made extensive findings of fact in this case. I think it covers three pages of our briefs, where he looked at the defendant's intelligence. He looked at his ability to understand questions. He looked at all of those. And those findings of fact are supported in the record and have to be accepted by this Court unless clearly erroneous. And it's our position, the government's position, that those facts are not clearly erroneous. The waiver was valid in this case. We reviewed de novo, though, whether the waiver was voluntary, right? You do, yes, yes, Your Honor, but you review findings of fact for clear error. And where is there a finding of fact here that the waiver was voluntary? That is at the very end of Judge Ishii's order. He goes through the findings of fact one by one, makes them, and then says that the waiver was voluntary. Can I point to one where he says the waiver was voluntary? As a factual matter? As a factual matter. Or at all. If you can find it. I didn't see a statement where he specifically looked at that question on its own. I don't, Your Honor, I don't think he specifically said the waiver was valid. Was voluntary. What he said, yes, what he said was this confession, this waiver was voluntary and had a three-part test. I think he was talking at that point, though, I think this maybe gets to Judge Watford's original question about what issues are still in play here. There's the waiver and then there's the confession. I don't see him separately addressing the waiver, which I think is an issue we reviewed de novo, but you're trying to invoke clear error review. Well, Your Honor, I think one of the reasons why there wasn't more on it is because this issue simply wasn't raised before Judge Ishii, which gets us back to the whole waiver of the issue. The focus of the argument, this pressure hearing, was on the reception of the waiver by the defendant and whether his intelligence, his language issues, affected that. The focus of the argument we have now goes on voluntariness, yes, Your Honor. So if that was what everyone was discussing, then why isn't there a finding on voluntariness or a ruling on voluntariness of the waiver? Your Honor, there was a ruling of voluntariness at the end where the court, after going through all the findings, said, I find that this and says I rule against you on the totality of the circumstances. But what page of the record should we look at to confirm the ruling that the waiver was voluntary? Your Honor, if you'll give me a minute, it would be in Judge Ishii's order. I would say ER 36 to 37 is probably the most relevant part of the record. Maybe starting on 35. He states on page 37 that he's going to deny the motion to suppress. He finds that he had the intellectual capacity and understanding to understand despite any issues. And then the judge is asking all the right questions here because it's kind of all mushed together. So if we think there's a question about voluntariness of the waiver and then a separate question about voluntariness of the confession, it seems more like he's talking the judge is talking about voluntariness of the confession and kind of skips over the first part. And I think, Your Honor, that's because that was the focus of the argument that the defendant was making at the suppression hearing. The judge was responding to the arguments that were being made, which is that the defendant, because of his language issues and his culture, did not understand the questions that he was being asked, was not responding appropriately. That was the whole focus of the argument, and that's why the judge focused on that in terms of his ruling. And that's why our first argument, that there was a waiver of this issue, was important because the judge simply didn't address some of these arguments because they weren't a problem identified by the defense to the court. If I may just briefly, Your Honor, I want to say on the argument about the plain error of admitting expert opinion, this is an alleged discovery violation. And it's unclear how a discovery violation could ever be plain error because the court simply, if the parties do not bring it to its attention, don't know what discovery was made, what representations were made. There's nothing in this record to indicate what the government did or didn't do in this case. And so even if there was some error, it could not be plain. Kagan. But are you talking about the statements of the father in the recording? No. I'm talking about the third issue, Your Honor, the argument where they said that the agent testified as an expert witness and, therefore, the court should have instructed and given a bifurcated testimony instruction. And so you're saying that the judge didn't know whether there was an agreement between the parties that the agent could do that? Or what are you saying? No. What I'm saying, Your Honor, is the argument that they've made is that it was plain error because the government did not give notice that they were going to use this witness as an expert. The government's argument now is that this could not have been plain error because the court had no idea, unless the parties bring it to its attention, what was or wasn't done in discovery. And so the court had no idea. I don't understand how that's relevant to the issue of whether an expert testifies as a fact witness and an expert or was testifying as an expert when they weren't supposed to. What does it matter what they did in discovery? Because they've made two arguments, Your Honor. The first argument was the Rule 16 argument that there was a violation of discovery. The second argument, which is whether he was testifying as an expert, Your Honor, first of all, he the testimony where he was objected to was he was asked, in other cases, he has seen some people delete it, some people don't delete it, it just some people don't have it at all. Sometimes the numbers are higher, sometimes they are lower. This was something that had already, it did not affect the trial because the defendant had admitted that he had previously deleted child pornography files. And so essentially it was something that was not even in dispute. And if it was expert witness by this witness, it was invited by the defense, because they are the first ones on cross-examination who began asking this witness's questions like that. They asked him specifically, you know, have you seen cases where people have lied to protect a family member? So if that was expert opinion, it was expert opinion that was first brought out by the defense. And if there should have been an instruction, that's where it should have been. So to the extent it was an error not to give the instruction, it was invited error by the defense, because they are the ones that started going down this road, and it only came up on redirect. In addition, Your Honor, it does not affect the any of the errors asserted here, do not affect the outcome of the trial, any of the plain errors, because here we had a oral confession, we had a written confession, and we had a confession that was corroborated in at least 12 different ways by facts that only the person who did this would know would subsequently be found on the evidence, the computer evidence when it was found. Thank you, Your Honor. Thank you. Roboto, one minute. Do we agree? Is very different from do you agree? Especially for a gentleman with an IQ in the high 60s, scared out of his wits, in his bedroom with two armed agents, door closed behind him, trying to get him to waive his rights and talk to them. There's a big difference between do you agree and do we agree? What is the big difference? The big difference is the agent making himself part of the process and the agent making it seem like, again, this is a foregone conclusion, that this is how it's going to proceed. I mean, it's still a question, right? So if the person being asked doesn't agree, the answer is the same, whether it's do you agree or do we agree. They wouldn't ask if you yourself didn't agree, so it's only a question about whether you agree. But it's a ploy by the agent to involve the government, involve the police in this activity, and essentially make it seem as if the decision is already partly made and he just has to make a decision to confirm what the agents have already decided. And so, again, Doody versus Ryan had different facts, but the rule there is that an agent just needs to ask the guy, do you agree to waive your rights and talk to us? And when they start doing these things, these tactics and these tricks, especially with someone like Mr. Cha, it violates Miranda, it's unfair, and they should not be allowed to do that. ER-28 has the portion of the transcript where the judge confirms in the argument section and ruling that the defense was raising the issue concerning the Miranda waiver, so that was confirmed. Where are the other findings from the district court? They're not really in there. It was sort of a package deal in terms of the ruling, but it was confirmed on ER-28 that that was being raised by the defense, and the government had no response to the second issue, so I'll submit on that. All right, thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court. The next case on calendar for argument is Unite Here International Union versus Shingle Springs Band of Miwok Indians.
judges: Rawlinson, Watford, Friedland